USDC, CLERK, CHARLESTON, SC RECEIVED 2009 OCT -6 P 2:57

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Frank McKenzie, Jr., #298786,  )    C. A. No. 2:09-1172-RBH-RSC
                               )
              Petitioner,      )
                               )
         -versus-              )    **REPORT AND RECOMMENDATION**
                               )
Anthony Padula,                )
                               )
              Respondent.      )

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' motion for summary judgment filed on August 21, 2009. 28 U.S.C. § 636(b).

**PROCEDURAL HISTORY**

The Petitioner, Frank McKenzie, Jr., is presently confined in the Lee Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Richland County, South Carolina conviction and sentence. The Richland County Grand Jury indicted Petitioner at the April 2003 term of court for armed robbery (03-GS-40-2999). App. pp. 128, 146.[1]

---

[1] Petitioner had previously been incarcerated on Lexington County, South Carolina charges to which he waived Grand Jury presentment and he pled guilty at the same time as his Richland County charges. These charges included burglary in the first degree; two counts of armed robbery; five counts of kidnapping, assault and battery with intent to kill (ABIK) and conspiracy to commit armed robbery. App. pp. 129-45; 147-61. As the subsequent history will make clear, however, he was granted post conviction relief on these charges. See, Order, App. pp. 121-27.

Hans Pauling, Esquire, represented him on the charge.

On December 16, 2003, he pled guilty before the Honorable G. Thomas Cooper, Jr., and Judge Cooper sentenced him to thirty (30) years imprisonment. App. pp. 1-41. Petitioner did not appeal his conviction or sentence.

Petitioner filed a pro se Post-Conviction Relief (PCR) Application (04-CP-40-3585) on July 29, 2004, challenging both the Richland County conviction and the Lexington County convictions. Petitioner alleged the following grounds for relief:

> 1. Ineffective assistance of counsel;
>
> 2. Involuntary guilty plea due to ineffective assistance of counsel; and
>
> 3. Defective warrant/affidavit.

App. pp. 43-49.

With the assistance of his PCR attorney, Tara Dawn Shurling, Esquire, Petitioner filed an Amended Application for Post-Conviction Relief, in which he raised the following grounds for relief:

> 1. Counsel was ineffective for failing to timely apprise Applicant of the Lexington County charges he was presented with minutes before his hearing;
>
> 2. Counsel was ineffective for failing to thoroughly review Applicant's Lexington County charges and for failing to make a motion to quash those indictments when even the State admitted that the victims had stated that they had never seen Applicant and that Applicant had never been at the scene of the robbery;

2

> 3. Counsel was ineffective for coercing Applicant into pleading to all charges when neither counsel nor Applicant had a meaningful opportunity to review the Lexington indictments and the foundation for the charges that they stemmed from; and
>
> 4. Counsel was ineffective for allowing Applicant to plead to all charges to receive a concurrent sentence in Richland County on charges from both counties when the Lexington County indictments were never put on file in Richland County.

App. pp. 50-51.

The Honorable James R. Barber, III, held an evidentiary hearing into the matter on February 13, 2006, at the Richland County Courthouse. Petitioner was present represented by Shurling. Petitioner testified on his own behalf, and he presented the testimony of trial counsel Pauling. The State did not present any witnesses. App. pp. 59-118.

On November 14, 2006, Judge Barber filed an Order granting relief based upon Petitioner's claims that his right to effective assistance of counsel was denied when his counsel coerced him into pleading guilty to the Richland and Lexington County charges, since counsel "made no effort whatsoever to see to it that [Petitioner] had the opportunity to make a counseled decision with regard to the Lexington County charges." App. pp. 121-27.

The State, as petitioner, timely served and filed a notice of appeal from the grant of PCR and raised two questions:

I. Did the PCR Court err in finding that trial counsel was ineffective in his representation of Respondent on his Richland County charges?

II. Did the PCR Court err in finding that Respondent's guilty plea was involuntary based on his not having a Lexington County court appointed attorney?

Deputy Chief Appellate Defender Wanda H. Carter represented Petitioner here as respondent in the collateral appellate proceedings and filed a Return to Petition for Writ of Certiorari on October 1, 2007.

On April 16, 2008, the South Carolina Supreme Court filed an Order granting certiorari on the question involving the Richland County charge but denying certiorari on the question involving the Lexington County charge. The South Carolina Supreme Court reversed the PCR court's judgment in an unpublished Opinion filed on February 23, 2009. State v. McKenzie, 2009-MO-012 (S.C. S.Ct. Feb., 23, 2009). The court found that there was "no evidence in the record to support the PCR court's findings that respondent's plea counsel was ineffective." Id. at 2. The Remittitur was sent to the Richland County Clerk of Court on March 11, 2009.

The following documents have been made part of the record here:

1. Appendix, the Honorable James R. Barber, III, Circuit Court Judge;

2. Petition for Writ of Certiorari dated May 16, 2007;

4

3. Return to Petition for Writ of Certiorari dated October 1, 2007;

4. South Carolina Supreme Court's Order granting certiorari dated April 16, 2008;

5. Brief of Petitioner dated May 14, 2008;

6. Brief of Respondent dated July 10, 2008;

7. South Carolina Supreme Court's Memorandum Opinion No. 2009-MO-012 dated February 23, 2009;

8. Remittitur dated March 11, 2009.

**HABEAS ALLEGATIONS**

Petitioner raised the following allegations in his pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254:

> GROUND ONE: Whether the Supreme Court of South Carolina erred by [separating] the Richland County charge[] from the Lexington County charges; Although the plea court consolidated the cross county offenses, and counsel was later held to render an ineffective performance, that as a result, invalidated petitioner['s] plea convictions for the Richland and Lexington County charges?
>
> SUPPORTING FACTS: The petitioner alleges, being the Richland County charge and the Lexington County charges [were] consolidated under one plea, the convictions were inextricably linked in-so-far-as, when his counsel failed to render effective assistance for the Lexington County charges, the error resulting within was "per-se prejudicial" on the Richland County charge.

On August 21, 2009, the petitioner was provided a copy of the respondents' motion for summary judgment and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules

of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The petitioner filed an opposition to the motion on September 4, 2009. Hence it appears consideration of the motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2008. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, 28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be

correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## DISCUSSION

A review of the record and relevant case law reveals that the respondent's motion for summary judgment should be granted and this matter ended.

As a preliminary matter, this petition was filed timely and all grounds presented have been exhausted and not defaulted. See, 28 U.S.C. §§ 2244(d) and 2254(b)(1).

Petitioner asserted that his guilty plea to the armed robbery in Richland County was involuntary because the Richland County charge and the Lexington County charges were consolidated and "inextricably linked" under one plea, so that "when his counsel failed to render effective assistance for the Lexington County charges, the error resulting within was 'per-se prejudicial' on the Richland County charge." It appears that the South Carolina Supreme Court's rejection of Petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. § 2254(d)(1).

7

Petitioner testified at his PCR hearing as follows. He thought, at the time of his guilty plea, he was facing only the Richland County armed robbery charge. He only discovered otherwise shortly before his plea, and he claimed that he was surprised. Trial counsel Pauling had been appointed to represent Petitioner on the Richland County armed robbery charge seven or eight months prior to the plea. For reasons Petitioner did not know, another attorney was never appointed for the Lexington County offenses[2]. Before the Petitioner entered his plea, Pauling told Petitioner that he was going to try and work out a deal for the charges from both counties. App. pp. 65-67; 72; 76.

When Pauling told Petitioner, shortly before the plea, that it was in his best interest to sign waivers of presentment on the Lexington County charges, Petitioner said that "I feel like I'm signing my life away." But Counsel had led Petitioner to believe that he would be found guilty in both Richland and Lexington Counties. App. pp. 77-80. Counsel also told Petitioner that he faced a possible mandatory sentence of life without parole (LWOP) if he was convicted of the one Richland County armed robbery charge and later convicted on a subsequent date of one of the Lexington County armed robberies, even though he did not have a

---

[2] Petitioner had been arrested in Virginia and extradited to Richland County. At that time, he was served with the Richland County armed robbery indictment and a Lexington County arrest warrant. App. pp. 72-74.

8

prior record. Also, because he was charged with several other "most serious offenses" in Lexington County, under South Carolina law, the State would have multiple chances of securing an LWOP sentence. The guilty plea to all of the charges was intended to avoid that possibility. Petitioner would have asked for a jury trial if it had not been for the possibility of an LWOP sentence, and that he would not have agreed to a guilty plea if he had been aware of the other charges. App. pp. 67-72; 77-80.

Also, he claimed that counsel had only met with him twice, and that the second meeting only lasted twenty or thirty minutes. He maintained that he never spoke to a lawyer about the remaining Lexington County charges. His understanding was that the plea bargain was to consolidate the charges from both counties and that he was to receive concurrent sentences, with the trial court deciding the appropriate sentence. Counsel never told him that he could receive thirty-five years, and counsel had mentioned a possible sentence between ten and twenty years imprisonment. App. pp. 74-77.

On cross-examination, Petitioner admitted that he remembered the trial judge reading each indictment to him at the plea and explaining to him the possible punishment for each offense. He also admitted telling the trial judge that he wished to plead guilty to each offense. He likewise admitted that he responded truthfully to the other questions by the trial court in the plea

colloquy indicating that his guilty plea was knowingly and intelligently made and that he wanted to give up all rights associated with a trial. He told the judge that he was satisfied with Pauling's representation, that he had had sufficient time to consider the plea, that he wanted to waive presentment of the Lexington County charges and transfer jurisdiction to Richland County for purposes of his plea, all as reflected by the transcript. He testified that he had told the truth at his plea.

Yet, he also testified at the PCR hearing that he "was just signing papers;" that he did not really understand how many cases were being disposed of at the plea; and that he did not answer truthfully when he said that counsel had discussed the unindicted Lexington County offenses with him. Rather, he was just following counsel's advice that the pleas were in his best interest. App. pp. 82-86.

In response to questioning by the PCR court, Petitioner conceded that there never was a promise as to the sentence that he would receive, that he knew that he was pleading to armed robbery charges, and that he had been aware that he could have receive up to a thirty years sentence for each of the armed robbery charges. App. pp. 88-89. Additionally, when the PCR judge asked him to state the basis for his challenge to the Richland County charge, he did not have one. Specifically, Petitioner had the following exchange with the judge:

10

Q. ALL RIGHT. ONE OTHER QUESTION. TELL ME WHAT THE BASIS OF YOUR CONTESTING JUST THE RICHLAND COUNTY CHARGE IS.

A. I'M NOT SURE I UNDERSTAND THE QUESTION.

Q. ALL RIGHT. YOU TOLD MS. SHURLING YOU WERE . . . NOT JUST CONTESTING THE LEXINGTON COUNTY CHARGES, AND I CAN UNDERSTAND WHAT YOU'RE SAYING THERE. YOU DIDN'T -- YOU SAY YOU DIDN'T HAVE A LAWYER OVER THERE. YOU DIDN'T KNOW THESE CHARGES EXISTED OTHER THAN ONE ARMED ROBBERY. BUT WHAT IS THE BASIS -- BECAUSE YOU CAME UP HERE WITH THE UNDERSTANDING YOU WERE GOING TO PLEAD AT LEAST TO THE RICHLAND COUNTY CHARGE; RIGHT?

A. YES, SIR.

Q. WHAT IS YOUR BASIS FOR CONTESTING THAT CHARGE NOW? WHY DO YOU SAY THERE WAS SOME PROBLEM WITH THE CHARGE TODAY?

A. WELL, I FEEL IF I COULD GET MY SENTENCE - - WIN MY P.C.R. HEARING TODAY, THEN I'LL PROBABLY HAVE A BETTER CHANCE OF GOING BACK TO COURT AND STARTING BACK OVER.

Q. WELL, YOU MIGHT DEFINITELY HAVE THAT, BUT I'M TRYING TO UNDERSTAND WHAT YOUR LEGAL BASIS IS FOR SAYING THAT THERE WAS A PROBLEM WITH THE RICHLAND COUNTY CHARGE. WHAT DO YOU SAY IS THE REASON THAT THERE'S A PROBLEM WITH THE RICHLAND COUNTY PLEA? NOT THE LEXINGTON COUNTY PLEAS. WHAT WAS DONE WRONG WITH THE RICHLAND COUNTY PLEA, THE ARMED ROBBERY IN RICHLAND COUNTY?

A. WELL, WE NEVER DID - - -

Q. WHAT DID MR. PAULING DO WRONG?

A. WELL, I CAN'T -- I CAN'T SAY HE DID -- REALLY DID ANYTHING WRONG.

Q. ON THE RICHLAND COUNTY.

A. ON THE RICHLAND COUNTY. NOT - - I CAN'T - - I CAN'T SAY.

App. 90-92.

11

Pauling testified next and stated that he was appointed to represent Petitioner on the Richland County armed robbery charge in August before the December 16, 2003, guilty plea. He received discovery relating to this offense. The discovery included a statement from co-defendant Kenjara Pressley, in which he discussed a home invasion in Lexington County on December 23, 2002. The statement was "very limited" and did not have any details about Petitioner's involvement, other than Petitioner had given his co-defendants a ride to the area, dropped them off when they spotted a house with the front door ajar and a vehicle parked in the driveway, and he drove away. Also, there was information about Petitioner's involvement in a Lexington County armed robbery later that day in which the vehicle from that residence was used. Counsel explained that Petitioner was tied into these offenses both on the front and back ends. Then, he asked Petitioner about this statement, and Petitioner "knew that he had something in Lexington." Contrary to Petitioner's testimony, Pauling indicated that Petitioner was aware of all of the charges he faced in both counties. App. pp. 93-97; 112.

Pauling asked Petitioner if he had an attorney on the Lexington County charges, and Petitioner said that he did not. Pauling had spoken to Assistant Fifth Judicial Circuit Solicitor Dana Pellizzari about a co-defendant's request for a jury trial and whether Petitioner would cooperate. Following his

conversation with Petitioner, Pauling contacted Assistant Eleventh Judicial Circuit Solicitor Tav Swarat. Pauling explained that, "I had to figure out everything that he was looking at because I didn't want to cooperate in Richland and leave the Lexington stuff hanging out there." App. pp. 93-94.

Counsel denied telling Petitioner that he had the "right to a separate court-appointed lawyer on his Lexington County charges," but rather told Petitioner that he could handle Petitioner's Richland County charge and that he "could ask that the charges be brought over from Lexington, but that was up to the Lexington County Solicitor." Pauling also explained that Petitioner "would actually have to give permission to do a plea in Richland [County], waiving jurisdiction in Lexington [County]." Pauling testified that Petitioner never made an on-the-record waiver of his right to counsel on the Lexington County charges and that he was never appointed or retained to represent Petitioner on the Lexington charges. App. pp. 97-99.

Pauling also testified that "it wasn't like December 16th rolled around and I said, 'oh, by the way, let's handle these Lexington charges today.'" App. p. 110, ll. 19-21. Pauling again explained that Petitioner was aware of the Lexington County charges, and that he had discussed those charges with Petitioner. App. p. 112, ll. 7-13. Counsel did not request discovery, but he testified that the charges in Lexington County were adequately

13

discussed in the statement from Kimjaro Pressley, which was included in the discovery materials from Richland County; and that he did not believe the discovery would have given him any more facts. App. p. 112, l. 19-p. 113, l. 4.

Pauling met with Pellizzari and Petitioner twice at the end of October because an October 21st or October 27th trial date for his co-defendant, Heyward, had been set on the Richland County charges. Pellizzari refused to discuss the Lexington County charges and only agreed not to take a position on any subsequent motion to consolidate the charges from both counties. She also indicated that if Petitioner cooperated at trial, she might help him. Petitioner was willing to cooperate. App. pp. 98-103.

Pauling independently contacted Swarat. Pauling said that he felt Petitioner would have alleged the failure to dispose of the Lexington charges at the same time as the Richland County armed robbery amounted to ineffective assistance of counsel. Counsel explained his discussions with Pellizzari to Swarat, who indicated that he wanted to see what happened in Richland County. However, Swarat agreed to a plea when counsel explained that he wished to consolidate all of the charges against Petitioner in one plea and receive concurrent sentences, so as to avoid an LWOP sentence, given Petitioner's relatively minor degree of involvement in the Lexington crimes. Ultimately, the prosecutors agreed not to seek consecutive sentences, but did not agree to

concurrent sentencing. Pauling was aware that the maximum sentence Petitioner would receive on any one charge was thirty years imprisonment. Also, he explained these discussions to Petitioner, who agreed to plead guilty. App. pp. 98-110; 116.

In response to the PCR judge's questioning, Pauling testified that the "pressing issue" was that he was going to have to deal with that Richland County charge "one way or the other" because the Fifth Circuit Solicitor's Office was "pushing on that." Also, the two co-defendants ultimately pled guilty. As a result, he could not wait on disposition of the Lexington County charges. "I was under the track system here, and I had already been given trial notice." App. pp. 113-15.

In reversing the PCR court's decision to vacate the Petitioner's guilty plea on the Richland County armed robbery charge, the South Carolina Supreme Court found no probative evidence in the record to support the PCR court's finding that Petitioner's counsel was ineffective, and cited Pierce v. State, 338 S.C. 139, 144-45, 526 S.E.2d 222, 224-25 (2000) as setting the analytical framework for establishing ineffective assistance of counsel. In turn, the Pierce court held,

> In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove counsel's performance was deficient and the deficient performance prejudiced the applicant's case. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989). Where there has been a guilty plea, the applicant must

>prove counsel's representation fell below the
>standard of reasonableness and, but for counsel's
>unprofessional errors, there is a reasonable
>probability he would not have pleaded guilty and
>would have insisted on going to trial. <u>Hill v.
>Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d
>203 (1985); <u>Alexander v. State</u>, 303 S.C. 539, 402
>S.E.2d 484 (1991). Thus, an applicant must show
>both error and prejudice to win relief in a PCR
>proceeding. <u>Scott v. State</u>, 334 S.C. 248, 513
>S.E.2d 100 (1999).

When these principles are applied to the instant habeas petition, it appears that Petitioner's arguments fail. First, Petitioner has not shown constitutionally deficient performance by Pauling. In fact, when questioned by the PCR Court regarding the legal basis to challenge the Richland County plea, Petitioner was unable to articulate any ineffectiveness by trial counsel. Instead, he testified that "[w]ell, I can't - I can't say he did - really did anything wrong ... on the Richland County [charge]." App. p. 91, l. 23-p. 92, l.4.

Additionally, all of the implied findings in the Order Granting PCR regarding ineffective assistance of counsel for the Richland County charge exist as a result of the inadequacies of the Lexington County convictions which were reversed. For example, the PCR judge found that "[c]ounsel, who was appointed in Richland County, did not seek to be appointed as counsel of record in the Lexington cases as well." App. p. 124. The PCR judge further found that Pauling "made no effort whatsoever to see to it that his client had the opportunity to make a counseled

16

decision with regard to the Lexington County charges." App. p. 125. The PCR judge stated that it would be advantageous to Petitioner to have all of the cross-county charges disposed of on the same day, implicitly because this avoided a potential LWOP sentence. App. p. 124.

The ultimate issue is whether trial counsel was ineffective for attempting to handle the Lexington County charges and Richland County charges the same day in order to avoid LWOP. The PCR judge's Order alludes to an ideal scenario in which the Richland County charges could be continued until the Lexington County charges were ready to proceed. However, there is no evidence to support that and, to the contrary, the only evidence in the record is that the "pressing issue" was that counsel was going to have to deal with that Richland County offense "one way or the other" because the Fifth Circuit Solicitor's Office was "pushing on that." Also, the two co-defendants ultimately pled guilty. As a result, Pauling could not wait on disposition of the Lexington County charges since, "I was under the track system here, and I had already been given trial notice." App. pp. 113-15.

As to the second Strickland prong, Petitioner believes that, but did not offer any evidence of how, counsel's alleged lack of preparation regarding the Lexington County charges prejudiced the handling of the Richland County charges. He pointed out that

17

trial counsel did not seek discovery for the Lexington County charges, yet he failed to present any evidence at the PCR hearing as to what a constitutionally effective investigation into those charges would have uncovered helpful to him on the Richland County armed robbery. App. pp. 111-13. Therefore, there is no evidence that counsel's alleged deficient performance was prejudicial to Petitioner on the Richland County charge. See, e.g., Beaver v. Thompson, 93 F.3d 1186, 1995 (4th Cir. 1996) (rejecting claim that counsel was ineffective for failing to present mitigation evidence family members, where there was no proffer of this testimony); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony).

It was Petitioner's burden to make such a showing in order to demonstrate that he was prejudiced by its absence when he pled to both the Lexington and Richland County charges; he did not meet his burden to prove but for trial counsel's deficient performance, there was a reasonable probability that he would not have pled guilty to the Richland County armed robbery charge and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Therefore, the South Carolina Supreme Court's conclusion that there was "no evidence in the record to support the PCR

court's findings that [Petitioner]'s plea counsel was ineffective [in handling the Richland County charge]," was not "contrary to" and did not involve an "unreasonable application of" <u>Strickland</u> and <u>Hill</u> or other clearly established United States Supreme Court precedent. § 2254(d)(1). Petitioner is not entitled to habeas corpus relief here.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondents' summary judgment motion be granted and this petition dismissed.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
October 6, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).